FILED
2011 Mar-28  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH VINES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 2:09-CV-2190-VEH** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Elizabeth Vines ("Ms. Vines") brings this action pursuant to 42 U.S.C. § 1614(a)(3)(A) of the Social Security Act.  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB").  Ms. Vines timely pursued and exhausted her administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Vines was 57 years of age at the time of the hearing before the administrative law judge (hereinafter "ALJ").  (Tr. 11, 14).  She completed the ninth grade and obtained a GED.  (Tr. 14).  She has previously worked as a clerical

specialist for a bank.  (Tr. 68-69).

Ms. Vines claims that she has been unable to work since January 3, 2005, due to severe back pain, migraine headaches, sinus problems, diabetes, asthma, and carpal tunnel syndrome.  (Tr. 14, 16C, 76).  At the hearing, Ms. Vines testified that she had, on average, one migraine headache a week which would last from 24 to 72 hours and would involve photo-sensitivity and nausea.  (Tr. 15).  She stated that she had been experiencing severe migraines for a long time but that they had worsened in the 3 to 4 years preceding the hearing.  (Tr. 16).  Ms. Vines testified that she started experiencing severe pain in her back in 2005.  (Tr. 16A).  She testified that sometimes she can only function for about 15 minutes at a time, and then she has to stop and either lie down or elevate her feet.  (Tr. 16A).  She stated that she is able to sit for 15 minutes, stand for 15 to 20 minutes, walk for a block or two, and lift only five pounds.  (Tr. 16D-16E).  Ms. Vines also testified that she has problems writing due to carpal tunnel syndrome and that she has difficulty controlling her diabetes.  (Tr. 16B-16C).

Ms. Vines protectively applied for DIB on March 7, 2006.  (Tr. 22).  This application was denied by the Commissioner on July 3, 2006.  (Tr. 28).  Ms. Vines filed a written request for a hearing by an ALJ on July 20, 2006.  (Tr. 35).  A hearing was held on July 30, 2008.  (Tr. 9).  The ALJ subsequently denied Ms. Vines's

application on March 18, 2009.  (Tr. 27).  On April 17, 2009, Ms. Vines filed a request for review of the ALJ's decision.  (Tr. 4).  The Appeals Council denied her application for review on August 28, 2009.  (Tr. 1).

Ms. Vines filed a complaint with this court on October 28, 2009, which asks for a judicial review of the ALJ's decision.  (Doc. 1).  On May 17, 2010, Ms. Vines filed a brief (doc. 15) in support of her appeal, and on July 26, 2010, the Commissioner followed with his responsive brief (doc. 16).  This court has carefully considered the record and, for the reasons stated below, affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than

3

a scintilla, but less than a preponderance." *Id*.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1]  The Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;

---

[1]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 17, 2011.

4

(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)    whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Phillips*, 357 F.3d at 1239.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Vines had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, January 5, 2005. (Tr. 24). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: migraine headaches, back pain, sinusitis, diabetes mellitus,

hypertension, asthma and bilateral carpal tunnel syndrome." (Tr. 24). Accordingly, the ALJ concluded that Ms. Vines satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Vines did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24). Ms. Vines does not challenge this determination on appeal.

The ALJ then evaluated Ms. Vines's residual functional capacity ("RFC") at step four, and the claimant was found to have the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except for the need for a sit/stand option."[2] (Tr. 25). Further, the ALJ, relying upon testimony from the vocational expert, determined that at this RFC sedentary level with a sit/stand option the claimant was able to perform her past relevant employment as a "clerical work[er] in a bank." (Tr. 26).

---

[2] The Regulations define sedentary work as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Accordingly, the ALJ concluded Ms. Vines was not disabled as defined by the Social Security Act, and denied her DIB claim. (Tr. 27).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See id.* ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added).

In this appeal, Ms. Vines contends that the ALJ's pain and credibility findings were not based on substantial evidence. (Doc. 15 at 6-9). Specifically, Ms. Vines argues that the ALJ did not properly consider the medical evidence of record which shows her longitudinal history of complaints of pain and attempts at relief. (Doc. 15 at 7). In its review, the court finds that the ALJ's decision is due to be affirmed.

7

**THE ALJ EVALUATED THE CREDIBILITY OF MS. VINES'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN UNDER THE APPROPRIATE LEGAL STANDARD AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**.

In order to satisfy the Eleventh Circuit pain standard, Ms. Vines must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Further, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). If the ALJ discredits subjective testimony on pain, she must articulate explicit and adequate reasons for doing so. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

In this case, the ALJ determined that Ms. Vines had not met her burden. More specifically, the ALJ explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 25).

Ms. Vines argues that the ALJ did not properly consider the medical evidence of record which shows her longitudinal history of complaints of pain and attempts at relief. (Doc. 15 at 7).

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.

SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).

On February 9, 2005, Ms. Vines sought treatment from Dr. Fagan for her worsening migraine headaches. (Tr. 111). Dr. Fagan diagnosed her with common vascular headaches and prescribed Medrol. (Tr. 112). On March 14, 2005, Ms.

9

Vines received occipital nerve blocks bilaterally.  (Tr. 145).  On April 6, 2005, Ms. Vines was assessed with progressive headaches with ataxia and her Notriptyline was increased.  (Tr. 110).  An MRI of the brain and cervical spine was normal.  (Tr. 109). On May 12, 2005, Ms. Vines returned for a follow-up visit with Dr. Fagan, complaining of trouble with her hands and problems with the occipital neuralgia.  (Tr. 109).  Dr. Fagan indicated that he would try repeat nerve blocks for her occipital neuralgia and carpal tunnel syndrome.  On July 13, 2005, Ms. Vines reported that her headaches were somewhat better with Inderal but she was having a lot of back pain and carpal tunnel syndrome.  (Tr. 108).  Her treatment plan included physical therapy and an epidural block.  (Tr. 108).  Ms. Vines did not attend any physical therapy sessions beyond the initial evaluation.  (Tr. 135).  On August 25, 2005, Ms. Vines underwent a second sinus surgery  to help her chronic sinusitis and headaches.  (Tr. 119).

An x-ray taken on May 15, 2005, of the lumbar spine revealed mild lumbar spondylosis and L4-5 degenerative disc disease.  (Tr. 26, 142).  On July 28, 2005, Ms. Vines underwent a lumbar epidural steroid injection.  (Tr. 136).  On August 3, 2005, Ms. Vines received an initial evaluation for physical therapy, complaining of pain in her lower back and left side.  (Tr. 129-34).  Although she was prescribed physical therapy, Ms. Vines did not attend any of these sessions.  (Tr. 135).

The ALJ's partial negative credibility finding in this instance is supported by substantial evidence contained in the record.  The ALJ observed that Ms. Vines did not see a doctor on a regular basis and did not have any recent hospitalizations or emergency room visits for any of her impairments.  (Tr. 26).  The ALJ noted that Ms. Vines did not attend any of her prescribed physical therapy sessions and presented no evidence of treatment after April 2006.  (Tr. 26, 135).  The ALJ also highlighted the fact that Ms. Vines failed to attend the scheduled consultative evaluations.  (Tr. 26, 157).  No reason is given for the lack of medical treatment after April 2006 or the failure to attend physical therapy sessions or the consultative exam.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence.

**DONE** and **ORDERED** this the 28th day of March, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

11